IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE M. KELLER, | ) | Case No. 1:21-cv-1856 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Plaintiff, Christine M. Keller, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act.  Keller argues that a remand under Sentence Six of 42 U.S.C. § 405(g) is warranted so that an Administrative Law Judge ("ALJ") can consider previously unavailable evidence.  Keller also challenges the ALJ's negative findings, contending that the ALJ misevaluated a letter signed by her treating physician, Inderpit Singh, MD, and the record evidence generally in determining Keller's residual functional capacity ("RFC").

A remand pursuant to Sentence Six is not warranted because Keller has not established that the evidence upon which she seeks a remand is "new" or that "good cause" excuses her failure to present the evidence at the administrative hearing level.  The ALJ reasonably determined that Dr. Singh's opinion was not relevant to the period under adjudication.  And the

ALJ applied proper legal standards in her evaluation of the evidence before her. Therefore, the Commissioner's final decision denying Keller's application for DIB must be affirmed.

## I.    Procedural History

On April 12, 2019, Keller applied for DIB. (Tr. 200).[1] Keller alleged that she became disabled on April 10, 2018 due to "1. Depression; 2. Connective Tissue Disorder; 3. Sjogren's Syndrome; and 4. Raynaud's Disease." (Tr. 200, 234). The Social Security Administration denied Keller's application initially and upon reconsideration. (Tr. 109-24, 126-39). Keller requested an administrative hearing. (Tr. 160).

On July 14, 2020, ALJ Susan Smoot heard Keller's case and denied her claim in an August 21, 2020 decision. (Tr. 57-66, 71-108). In doing so, the ALJ determined at Step Four of the sequential evaluation process that Keller had the RFC to perform light work, except:

> [Keller] could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds. [She] could frequently balance, and occasionally stoop, kneel, crouch, and crawl. [Keller] could frequently handle and finger with the bilateral upper extremities. [She] must … avoid[] exposure to dangerous moving machinery and unprotected heights. [She] could work in a routine environment where changes were infrequent. [She] could have occasional and superficial interactions with others, meaning that she could not be required to perform tasks that involve arbitration, confrontation, negotiation, collaboration, persuading others, directing the work of others, or being responsible for the safety or welfare of others.

(Tr. 62). Based on vocational expert testimony that someone with Keller's age, education, experience, and RFC could perform other work, the ALJ denied Keller's application. (Tr. 65-66).

Keller requested review by the Appeals Council, submitting additional evidence dating from April 2017 through May 2018. (Tr. 198-99, 296-99). On August 2, 2021, the Appeals Council determined that the new evidence was immaterial and declined further review, rendering

---

[1] The administrative transcript appears in ECF Doc. 8.

the ALJ's decision the final decision of the Commissioner.  (Tr. 1-3).  On September 29, 2021,

Keller filed a complaint to obtain judicial review.[2]  ECF Doc. 1.

## II.   Evidence

### A.   Personal, Educational, and Vocational Evidence

Keller was born on February 20, 1968.  (Tr. 200).  She was 50 years old on the alleged

onset date and the date last insured, which the ALJ determined to be December 31, 2018.  (Tr.

59).  Keller had a college education and past relevant work as a coffee shop manager and

employment specialist, which the ALJ determined she was unable to perform.  (Tr. 65, 235-36).

### B.   Relevant Medical Evidence

Keller contests only the ALJ's consideration of medical evidence related to her physical

impairments and argues only for the consideration on remand of new medical evidence of her

physical impairments; thus, the court will summarize the medical and non-medical evidence

related to her physical impairments exclusively.

#### 1.   Evidence before the ALJ

The medical record before the ALJ of Keller's physical impairments did not include

treatment notes from before the date last insured.  However, treatment notes from Inderprit

Singh, MD, summarized Keller's treatment since her first visit in July 2017.  (Tr. 333).  Keller's

medical history included: (i) Sjogren's syndrome, which was first diagnosed in January 2018;

(ii) fibromyalgia, for which Keller had received treatment since November 2017;

(iii) intermittent paresthesia in her right hand and feet since August 2017; (iv) fatigue since April

2017; (v) chronic low back pain; (vi) osteoarthritis in her knee and first CMC and MTP joints;

---

[2] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my
jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 13.

(vii) bilateral wrist pain; (viii) pancreatitis, which was diagnosed in March 2017; (ix) alcohol abuse; (x) benign hypermobility syndrome; and (xi) Renaud's disease.  (Tr. 333-34, 339).

Dr. Singh's treatment notes also summarized Keller subjective symptom complaints at a December 2017 visit.  (Tr. 331).  Keller reported: (i) jaw pain; (ii) neck pain radiating to her shoulders; (iii) mid and low back pain; (iv) occasional elbow pain; (v) first CMC joint pain; (vi) numbness even without an active Raynaud's phenomenon; (vii) knee pain with climbing stairs; (viii) foot pain; and (ix) paresthesia in her hands and feet.  *Id.*

On September 23, 2018, Keller presented to the Cleveland Clinic's emergency department with nausea, vomiting, and an inability to keep "anything down."  (Tr. 315, 319).  Keller stated that her symptoms had been present for a year and a half but had worsened over the previous month.  (Tr. 315).  The only thing she was able to swallow in the previous month was wine.  (Tr. 319).  On physical examination, Keller had unremarkable results except tachycardic heart rate.  (Tr. 316-17, 319).  Lab testing was remarkable for bacteria in her urine and elevated liver enzymes.  (Tr. 317).  The attending physician noted that Keller's presentation was concerning for complications of Sjogren's syndrome, Keller had not followed up with her rheumatologist or seen her primary care physician for her symptoms, and Keller had not lost any weight despite claiming not being able to swallow.  (Tr. 317, 319).  Keller was given IV fluids and Zofran.  (Tr. 317-18).  Following improvement in her symptoms, she was discharged with instructions to follow up with gastroenterology and rheumatology.  (Tr. 318).

The remaining evidence before the ALJ of Keller's physical impairments dated after the date last insured and was not summarized by the ALJ.  *See* (Tr. 62-64).  But because Keller challenges the ALJ's decision partly on the basis that the ALJ erred by not considering evidence post-dating the date last insured, the court will summarize that evidence.

4

On February 6, 2019, Keller visited Maggie Marcin, APRN-CNP, to establish care.  (Tr. 323).  Keller reported nasal pain, rash in her upper back, arthralgias, and myalgias.  (Tr. 323-24).  She also stated that she was diagnosed by a rheumatologist with undifferentiated connective tissue disease.  (Tr. 323).  On physical examination, Keller had unremarkable results except rash. (Tr. 325-26).  Nurse Practitioner Marcin ordered lab tests, provided a Medrol Dosepak, and referred Keller for a colonoscopy and to ENT.  (Tr. 327).

On May 1, 2019, Keller visited Dr. Singh, reporting that her rash had mostly resolved and that she wanted to address "clumsiness."  (Tr. 330).  Keller reported dizziness, bumping into things, instability, and two falls.  *Id.*  She stated that the falls were in the morning and partly due to severe foot pain.  *Id.*  She felt that she was not "as sharp as I should be."  *Id.*  She also reported: (i) low back pain that was worsened with prolonged standing; (ii) ankle, elbow, hip, hand, knee, shoulder, and wrist pain; and (iii) morning stiffness lasting one to two hours.  (Tr. 330-31).  On physical examination, Keller had unremarkable results except decreased lumbar spine range of motion, first CMC joint enlargement, knee crepitus, mild interphalangeal joint enlargement of the toes, dry and irritated palpebral conjunctiva, and decreased saliva pool.  (Tr. 332-33).  Dr. Singh refilled Keller's prescriptions for Cymbalta and Plaquenil and ordered blood tests.  (Tr. 336-39).

On October 15, 2019, Keller returned to Nurse Practitioner Marcin to review her lab results, which showed leukocytosis and a vitamin D deficiency.  (Tr. 424).  On physical examination, Keller had unremarkable results.  (Tr. 426).  Nurse Practitioner Marcin prescribed a vitamin D supplement.  (Tr. 427).

On January 10, 2020, Keller reported to Nurse Practitioner Marcin left thumb pain, arthralgias, and myalgias.  (Tr. 420).  On physical examination, Keller had popping in her left

thumb with movement and swelling.  (Tr. 422-23).  Nurse Practitioner Marcin ordered x-ray examination.  (Tr. 420).

On February 20, 2020, Keller reported that her neck and low back pain had been flaring over the previous three months.  (Tr. 416).  Keller also reported cracking in her neck, arthralgias, and myalgias.  *Id.*  On physical examination, Keller had unremarkable results except tenderness in the lower spine.  (Tr. 418).  Nurse Practitioner Marcin ordered x-ray examination and referred Keller to physical therapy.  (Tr. 415-16).

Keller underwent x-ray examination of her spine, the results of which showed moderate degenerative changes of the mid and lower cervical spine and multilevel degenerative changes worst in the lower lumbar spine.  (Tr. 432, 434-35).

On April 13, 2020, Keller had a telehealth appointment with Nurse Practitioner Marcin, reporting neck grinding with pain and lower back pain.  (Tr. 409).  She also reported feeling tired and myalgias.  *Id.*  Nurse Practitioner Marcin prescribed cyclobenzaprine.  *Id.*

Between April 15, 2020 and July 1, 2020, Keller attended physical therapy appointments with Scott Kline PT.  (Tr. 459-79).

Meanwhile, on June 1, 2020, Keller had a telehealth appointment with Dr. Singh, reporting that she was "Real good" and "Doing well."  (Tr. 452).  However, she reported worsening back pain, which at times resulted in her staying in bed all the time.  *Id.*  She also reported fatigue.  *Id.*  Dr. Singh diagnosed Keller with undifferentiated connective tissue disease. *Id.*

## 2.      Evidence Submitted after the ALJ Decision

Keller's post-ALJ decision evidence consisted of: (i) treatment notes from AxessPointe Community Health Center ("AxessPointe") from April 2017 through June 2017 (Tr. 39-48);

(ii) treatment notes from Dr. Singh from July 2017 through November 2017 (Tr. 7-35); and

(iii) abdominal and pelvis CT scan results dated May 21, 2018 (Tr. 37-38).

### a.      AxessPointe Records

On April 10, 2017, Keller visited AxessPointe to follow up on a hospitalization for acute pancreatitis. (Tr. 39). Keller reported left knee pain and swelling and wrist pain. (Tr. 41). Keller was diagnosed with acute left knee pain, hypercalcemia, thrombocytopenia, and wrist pain. (Tr. 39-41). The attending physician ordered x-rays of Keller's knee and wrists and an ultrasound of her left leg. (Tr. 39, 41).

On April 17, 2017, Keller reported that five days earlier she fell on her right knee and hand, after which she developed rib pain. (Tr. 42). She also reported painful swelling in her left knee and calf. (Tr. 42-43). On physical examination, she had a healing scab, pitting edema in her lower left extremity, and pain to palpation in the left knee. (Tr. 43). The attending nurse practitioner ordered a venous Doppler test of the left leg. (Tr. 42). The Doppler test showed a 5mm Baker's cyst. (Tr. 46).

On May 18, 2017, Keller reported knee pain and swelling. (Tr. 45). On physical examination, Keller had unremarkable results. (Tr. 46). Keller was referred to surgery for a consultation regarding the Baker's cyst. *Id.* The attending physician ordered additional blood work. *Id.*

On June 9, 2017, Keller reported that her Baker's cyst was resolving but she now had hip pain, with trouble walking and climbing stairs, morning stiffness, mild osteoarthritis of the left knee, shoulder pain, and hand pain. (Tr. 48). She also reported a rash, myalgias, and arthralgias. *Id.* On physical examination, she had itch marks on her skin and knee crepitus. *Id.* Based on

7

her lab results, Keller was diagnosed with Sjogren's syndrome and hypertriglyceridemia.  (Tr. 47).

<b>b.    Dr. Singh Treatment Notes</b>

On July 11, 2017, Keller visited Dr. Singh, reporting: (i) worsening joint pains since April 2017; (ii) morning stiffness lasting one to two hours; (iii) jaw pain with clicking; (iv) neck pain radiating into her shoulders; (v) mid and low back pain; (vi) ankle, foot, elbow, hand, hip, knee, wrist, and first CMC joint pain; and (vii) fatigue.  (Tr. 7-8).  On physical examination, Keller had: (i) decreased lumbar spine range of motion; (ii) first CMC joint enlargement; (iii) hammer toes with mild splaying; (iv) skin hyperextensibility and joint hypermobility; and (v) livedo of the skin.  (Tr. 8-9).  Dr. Singh diagnosed Keller with undifferentiated connective tissue disease, fibromyalgia, osteoarthritis, and Raynaud's disease.  (Tr. 11).  Dr. Singh prescribed vitamin D, Percocet, Protonix, folic acid, and Plaquenil and ordered lab tests.  (Tr. 11-17).

On August 10, 2017, Keller reported that she had been feeling better with Plaquenil and that her morning stiffness had resolved.  (Tr. 19).  However, she reported numbness in both hands.  *Id.*  On physical examination, she had decreased lumbar spine range of motion, first CMC joint enlargement, livedo of the skin, dry and irritated palpebral conjunctiva, decreased saliva pooling, and severe dry mouth.  (Tr. 20).  Dr. Singh diagnosed Keller with paresthesia, livedo reticularis, and chronic midline low back pain without sciatica.  (Tr. 23).  Dr. Singh prescribed Salagen, vitamin D, Prozac, folic acid, and Plaquenil.  *Id.*

On November 10, 2017, Keller reported a new leg rash, morning stiffness lasting about one hour, occasional dizziness, and that she "wore out at 3 pm."  (Tr. 25).  Keller also reported mild neck pain radiating into her shoulders, spasming low back pain, occasional elbow pain, and

8

improved hip and ankle pain.  *Id.*  On objective examination, Keller had decreased lumbar spine range of motion, first CMC joint enlargement, rash, knee crepitus, livedo of the skin, and mild interphalangeal joint enlargement of the toes.  (Tr. 26-27).  Dr. Singh diagnosed Keller with undifferentiated connective tissue disease, rash, paresthesia, and fibromyalgia.  (Tr. 30).  Dr. Singh prescribed Keller with Effexor, Klonopin, Plaquenil, vitamin D, Restasis, and folic acid.  (Tr. 32).

### c.    CT Scan

On May 21, 2018, Keller underwent CT examination of her abdomen and pelvis, the results of which showed: (i) minimal haziness of peripancreatic fat, possible for early or mild acute interstitial pancreatitis; (ii) mild extrahepatic biliary duct dilation; (iii) findings suggestive of hepatic steatosis; (iv) findings associated with chronic inflammatory bowel disease; and (v) distended urinary bladder.  (Tr. 38).

### C.    Relevant Opinion Evidence

### 1.    Examining Source, Jamie Hart, PT

On June 22, 2020, Jamie Hart, PT, conducted a "Key Functional Whole Body Assessment" of Keller.  (Tr. 445).  Based on Physical Therapist Hart's assessment, he opined that Keller was capable of performing "Light" work.  (Tr. 448); *see* (Tr. 445-47).  Specifically, Physically Therapist Hart stated that Keller could: (i) sit for up to 6 hours, 35 minutes at one time; (ii) stand for up to 2 hours, 15 minutes at one time; (iii) walk for up to 5 hours, "frequent moderate distances;" (iv) occasionally lift between 10.4 and 14.8 pounds; (v) push 29.5 pounds occasionally and 14.5 pounds frequently; (vi) pull 44.5 pounds occasionally; (vii) carry 22 pounds on the right side occasionally and 12 pounds frequently; and (viii) carry 32 pounds on the left occasionally.  *Id.*  He further opined that Keller could only occasionally perform postural,

reaching, and manipulative tasks.  *Id.*  Physical Therapist Hart indicated that his assessment reflected Keller's "current" physical capabilities.  (Tr. 448).

### 2.    Treating Source, Inderprit Singh, MD

On July 2, 2020, Keller's attorney mailed Dr. Singh a copy of Physical Therapist Hart's assessment and asked whether he agreed with the results and "whether Christine's disability and/or medical impairments have persisted since April 10, 2018."  (Tr. 480).  Dr. Singh wrote on counsel's letter that he agreed, and that Keller's assessment was "unchanged since initial visit 7/11/2017."  *Id.*

### 3.    State Agency Consultants

On September 3, 2019, Michael Lehv, MD, evaluated Keller's physical capacity based on a review of the medical evidence and determined that Keller could perform light work.  (Tr. 119-21, 123).  Specifically, Dr. Lehv found that Keller could: (i) lift 20 pounds occasionally and 10 pounds frequently; (ii) stand/walk/sit 6 hours in an 8-hour workday; (iii) frequently balance; and (iv) occasionally climb, balance, kneel, crouch, and crawl.  (Tr. 119-20).  On December 18, 2019, Linda Hall, MD, concurred with Dr. Lehv's assessment.  (Tr. 132-34).

### D.    Relevant Testimonial Evidence

Keller testified at the administrative hearing that she lived with her boyfriend.  (Tr. 77).  Because of the way Sjogren's syndrome affected her eyes, she preferred not to drive.  (Tr. 78).  Specifically, she would wake up on the morning feeling like she had sand in her eyes and could hardly swallow.  (Tr. 89-90).  She was also in a lot of pain and fatigue, with good days followed by a couple days of being "really down for the count."  (Tr. 90).  On good days, she could do a "couple things," such as dishes while seated, use a Swiffer, or go to the Drug Mart.  (Tr. 90, 94, 100).  She had three weeks of bad days for a week of good days.  (Tr. 94).

Keller testified that on a typical day, she woke up, put Restasis in her eyes and a heat pack on her eyes, tried to swallow and take her pills, and tried to get "something accomplished for the day." (Tr. 92). She relied on her boyfriend to prepare meals. (Tr. 99). Her functioning at the time of the hearing was worse than two years prior. (Tr. 92). Referring back to the relevant period, Keller testified that she could walk 15 to 20 minutes, after which she needed to sit down for the same amount of time. (Tr. 95). She could lift a gallon of milk with both hands. *Id.* Because of her arthritis, she could not stretch her hands. (Tr. 96). She could drive up to 20 minutes before feeling sore. (Tr. 96-97). And she had difficulty putting on clothes. (Tr. 98).

Vocational expert ("VE") Charles McBee testified that a hypothetical person with Keller's age, experience, education, and the ALJ's proposed limitations would be able to work as a merchandise marker, office helper, and sorter. (Tr. 104-05). The VE testified that an employer would not tolerate more than 10% off-task time or more than one absence per month. (Tr. 106). The VE testified that the individual would not be able to work if limited to a six-hour workday. (Tr. 107).

## III.     Law & Analysis

### A.     Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'"

*O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'").  But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").  And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

### B.    Sentence Six Remand

Keller argues that a remand is warranted under Sentence Six of 42 U.S.C. § 405(g) for the ALJ to consider new evidence from AxessPointe and Dr. Singh from 2017.  ECF Doc. 9 at 8-10.  Keller argues that these records were "new" because the Social Security Administration was unable to retrieve them, and counsel was only able to do so after Keller informed counsel of their existence.  ECF Doc. 9 at 9.  Keller argues that the records are "material" because they reflect her condition before the alleged onset date, corroborate her subjective symptom complaints, and contradict the ALJ's finding that she had a lapse in treatment with her rheumatologist.  *Id.*  And Keller argues that she can establish "good cause" for not making them part of the record earlier

because: (i) the Social Security Administration never retrieved them; and (ii) "the issue only arose after the ALJ's finding had a lapse in treatment prior to the date last insured."  ECF Doc. 9 at 9-10.

The Commissioner responds that the evidence is not "new" because Keller could have informed her attorney of their existence or requested them without counsel's assistance.  ECF Doc. 10 at 3.  The Commissioner further argues that Keller cannot fault the Social Security Administration to establish "good cause" because the burden was on her to support her application.  ECF Doc. 10 at 3-4.

A court may remand a case for the Commissioner to consider newly discovered evidence pursuant to Sentence Six of 42 U.S.C. § 405(g).  To obtain such a remand, the claimant must show that: (i) the evidence is new; (ii) the evidence is material; and (iii) good cause excuses the claimant's failure to incorporate the evidence into the record of a prior administrative proceeding.  42 U.S.C. § 405(g); *Casey v. Sec'y of Health & Hum. Serv.*, 987 F.2d 1230, 1233 (6th Cit. 1993).  Evidence is "new" if it did not exist or was unavailable at the time of the administrative proceeding.  *Finkelstein v. Sullivan*, 496 U.S. 617, 626 (1990).  And the Sixth Circuit takes a "harder line" approach to good cause – a claimant cannot simply point to the fact that the evidence was not created until after the ALJ hearing but must establish good cause for why she did not cause the evidence to be created and produced until after the administrative proceeding.  *See Perkins v. Apfel*, 14 F. App'x 593, 598-99 (6th Cir. 2001).

Keller has failed to establish that Sentence Six remand is warranted.  By Keller's own admission, she knew of the existence of the AxessPointe records and Dr. Sing's treatment notes but did not tell her attorney of their existence until after the ALJ hearing.  ECF Doc. 9 at 9 ("Only Plaintiff herself after informing counsel of the records and specially requesting them, did

they become available for submission.").  They were, therefore, available to Keller before the ALJ decision; she just did not think to tell her attorney or request them herself.  *Cf. Ross v. Comm'r of Soc. Sec.*, No. 2:20-cv-1028, 2021 U.S. Dist. LEXIS 24263, at *11 (S.D. Ohio Feb. 9, 2021) (concluding that opinion evidence was not "new" because other records from the treatment source were submitted into the medical record and the claimant or his attorney could have requested an opinion any time before the ALJ decision), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 34165 (S.D. Ohio Feb. 24, 2021).

Keller's arguments for why "good cause" exists to excuse the late submissions are also unavailing.  Keller first faults the Social Security Administration.  But the "good cause" inquiry focuses the *claimant's* obstacles, not those of the Social Security Administration.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *see also Oliver v. Sec'y of Health & Hum. Serv.*, 804 F.2d 964, 966 (6th Cir. 1986).  Keller appears to argue that she did not think her 2017 medical records were relevant until after the ALJ remarked on her "lapse" in treatment.  ECF Doc. 9 at 9-10.  As the Sixth Circuit has stated: "A party should always anticipate that a decision maker might rule against it.  A belief that one would not "lose" given the evidence admitted cannot meet the "good cause" standard for failing to obtain or submit all useful evidence in the first instance."  *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 726 (6th Cir. 2012).

Because the evidence upon which Keller seeks a remand is not "new" and because she has not established "good cause" for not obtaining and submitting it before the ALJ rendered her decision, Keller has not established a basis for remand under Sentence Six.  *See Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016) (stating that failure to establish any of the three elements of a Sentence Six remand "is fatal to the moving party's request").

14

###### C.     Opinion Evidence

Keller argues that the ALJ failed to apply proper legal standards in her evaluation of Dr. Singh's opinion.  ECF Doc. 9 at 13-18.  Keller argues that the ALJ should have treated Physical Therapist Hart's opinion as that of Dr. Singh's and analyzed it under the pertinent regulatory factors.  ECF Doc. 9 at 14.  And Keller argues that such an analysis would have shown that Dr. Singh's opinion was consistent with and supported by the medical and non-medical evidence.  *See* ECF Doc. 9 at 14-18.

The Commissioner argues that Keller has pointed to no authority holding that Dr. Singh's reference to Physical Therapist Hart's assessment, as opposed to an actual co-signature, would constitute a medical opinion.  ECF Doc. 10 at 8.  The Commissioner argues that any error nevertheless would have been harmless because: (i) the opinion was patently deficient; (ii) taking as true Dr. Singh's statement that Keller's condition was unchanged since 2017, treatment notes from 2017 showed unremarkable musculoskeletal objective exam findings.  ECF Doc. 10 at 9.

In her reply brief, Keller distinguishes her case from those cited by the Commissioner. ECF Doc. 12 at 4-9.  Keller asserts that Physical Therapist Hart's assessment was not based on Keller's subjective reporting.  ECF Doc. 12 at 6-7.

At Step Four of the sequential analysis laid out in the regulations, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e).  In doing so, the ALJ is required to "articulate how [she] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a).  At a minimum, the ALJ must explain how she considered the supportability and consistency of a

source's medical opinion(s), but generally is not required to discuss other factors.  20 C.F.R. § 404.1520c(b)(2)[3].

Initially, the court agrees with Keller that Dr. Singh's agreement with Physical Therapist Hart's assessment is sufficient to transform it into his own opinion.  *See Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 553 (6th Cir. 2020); *see also Priscilla v. Comm'r of Soc. Sec.*, No. 1:19-cv-644, 2022 U.S. Dist. LEXIS 10252, at *13 (S.D. Ohio Jan. 20, 2022) (stating that, as a legal matter, what matters under *Hargett* is that the treating physician affirmatively agrees with the functional capacity assessment, regardless of whether the assessment bears his signature).  And, importantly, the ALJ treated Dr. Singh's letter as an opinion.  *See* (Tr. 64).

The ALJ applied proper legal standards in her assessment of Dr. Singh's opinion.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  In her analysis of Dr. Singh's opinion, the ALJ stated:

> Dr. Singh indicates he agrees with the functional capacity assessment of Mr[.] Hart (14F1).  Again, that assessment came more than a year and a half after the date last insured in this matter, and thus is not particularly relevant to the claimant's functioning prior to December 31, 2018.  Dr. Singh also indicates that the claimant's assessment has not changed since his initial evaluation of claimant in 2017.  This statement provides no guidance about functional restrictions predating the date last insured.  For these reasons, I find no persuasiveness in Dr. Singh's July 2, 2020 statements, in terms of reaching an informed finding of the claimant's [RFC] in this matter.

(Tr. 64).  Essentially, the ALJ rejected Dr. Singh's opinion as not relevant to the period under adjudication.

The ALJ's conclusion was consistent with the regulations.  *See Lane v. Comm'r of Soc. Sec.*, No. 3:20-cv-1105, 2021 U.S. Dist. LEXIS 258021, at *30 (N.D. Ohio May 24, 2021) ("[A]n ALJ is required to consider a medical opinion issued after the date last insured only to the

---

[3] Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record.  20 C.F.R. § 404.1520c(c)(3)-(5).

extent that the limitations provided therein relate back to the period predating the last-insured date." (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849-50 (6th Cir. 2020)). And that conclusion was supported by substantial evidence. Physical Therapist Hart's assessment was, by its express terms, reflective only of Keller's "current" physical capacity at the time it was issued: June 22, 2020 – almost a year and a half after the date last insured. (Tr. 448).

The import of Dr. Singh's statement "unchanged assessment since initial visit" is unclear. (Tr. 480). Keller takes Dr. Singh's answer to mean that the functional limitations expressed in Physical Therapist Hart's opinion were present in July 2017. ECF Doc. 9 at 14. But that's not what the letter asked Dr. Singh. The letter asked Dr. Singh whether Keller's "disability and/or medical impairments have persisted since April 10, 2018." (Tr. 480). Dr. Singh's affirmative answer could refer to Keller's diagnoses or it could refer to functional limitations. Because it was not clear whether Dr. Singh's letter expressed an opinion on Keller's functional limitations during the period under adjudication, the ALJ reasonably determined that it did not relate back to relevant period. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) ("[W]e do not … resolve conflicts in the evidence … ."). Thus, the ALJ was not required to analyze Dr. Singh's letter under the regulatory factors governing medical opinions. *See Lane*, No. 3:20-cv-1105, 2021 U.S. Dist. LEXIS 258021, at *30.

### D. RFC

Keller argues that the ALJ failed to apply proper legal standards in determining her RFC. ECF Doc. 9 at 10-12. Keller argues that the ALJ's finding that there was a lack of significant musculoskeletal complications was inconsistent with the ALJ's Step Two finding of severe musculoskeletal impairments. ECF Doc. 9 at 10, 12. Keller argues that the ALJ ignored evidence bearing on the severity of her symptoms, including: (i) Dr. Singh's May 1, 2019

treatment note documenting her subjective symptom complains form December 2017; (ii) AxessPointe treatment notes from April 2017; (iii) May 21, 2018 CT scan results; (iv) Keller's subjective symptoms statements from her emergency room visit and from February 20, 2019 onwards; and (v) Keller's physical therapy notes through July 2020. ECF Doc. 9 at 10-12; ECF Doc. 12 at 1-2.  And Keller argues that the ALJ's observation that she had a lapse in treatment represented a misunderstanding of her specialist treatment. ECF Doc. 9 at 12.

The Commissioner responds that there is no inconsistency between a Step Two finding of a severe impairment with a Step Four finding that no limitations are attributable to that impairment. ECF Doc. 10 at 4-5.  The Commissioner argues: (i) the ALJ was not required to discuss all the evidence in the record; (ii) most of the overlooked evidence post-dated the last insured date; (iii) some of the overlooked evidence was not before the ALJ; and (iv) Keller has not established that any of the allegedly overlooked evidence would have affected the RFC. ECF Doc. 10 at 5-7.

As stated above, at Step Four of the sequential evaluation process, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e).  The RFC is an assessment of a claimant's ability to do work despite her impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR LEXIS 5.  Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. § 404.1529(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.

The ALJ applied proper legal standards in making her RFC assessment.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  Keller's contention of an inconsistency between the ALJ's Step Two finding of severe impairments and her RFC findings misstates the relationship between findings at Step Two and Step Four.  A determination at Step Two that an impairment is "severe" means only that the impairment has "more than a minimal effect" on the claimant's ability to do basic work activities.  *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009) (quoting SSR 96-3p, 1996 SSR LEXIS 10, at *3 (July 2, 1996)).  But a Step Two finding that an impairment is "severe" does not mandate a finding that there are functional limitations attributable to that impairment.  *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *see also Simpson v. Comm'r of Soc. Sec.*, No. 1:13-cv-649, 2014 U.S. Dist. LEXIS 107840, at *28 (S.D. Ohio Aug. 5, 2014) ("Put another way, the existence of a severe impairment says nothing as to its limiting effects.").

The ALJ did not "cherry-pick" the evidence.  The ALJ expressly cited and discussed Dr. Singh's May 1, 2019 treatment notes as relevant to Keller's medical history and condition before the date last insured.  (Tr. 62-63 (discussing Tr. 332-33)).  And the ALJ considered Keller's reported symptoms during the period under adjudication, as documented in Dr. Singh's May 2019 treatment notes and her September 2018 emergency room visit.  (Tr. 63); *see also* (Tr. 315, 319, 330-34).

Keller's medical records from AxessPointe, Dr. Singh's treatment notes from 2017, and Keller's May 2018 CT scan results were not before the ALJ when the ALJ issued her decision.  *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) ("[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.").  And as discussed above, Keller has not established the

requirements of a remand under Sentence Six for the ALJ to issue a new decision in light of the later-received evidence.

The remaining evidence Keller faults the ALJ for not considering was dated after the last insured date.  Because Keller applied for DIB, she had to establish that she became disabled on or before December 31, 2018.  *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); (Tr. 59). For evidence post-dating the last insured date to be relevant, and thereby warrant consideration, it must be "reflective of a claimant's limitations prior to the date last insured."  *Walton v. Astrue*, 773 F. Supp. 2d 742, 749 (N.D. Ohio 2011).  Other than remarking on the ALJ's failure to consider evidence post-dating the last insured date, Keller has not articulated how her subjective reporting from February 2019 onwards, imaging tests from 2020, and objective exam results from May 2019 through July 2020 are reflective of her functional limitations on December 31, 2018.  *See generally* ECF Doc. 9; ECF Doc. 12.  Thus, the court finds no error in the ALJ's consideration of the evidence before her.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Lastly, the ALJ did not err when she stated that Keller had a "lapse in treatment prior to the date last insured and had not followed up with her rheumatologist when she visited the emergency room."  (Tr. 63).  The ALJ merely repeated what Keller's emergency room treatment notes stated.  *See* (Tr. 319) (noting that Keller "did not show for her last rheumatology appointment").  Thus, the ALJ applied proper legal standards in considering the evidence and making her RFC findings.

**IV.    Conclusion**

Because Keller has not established a basis for a Sentence Six remand, and because the

ALJ applied proper legal standards and reached a decision supported by substantial evidence, the

Commissioner's final decision denying Keller's application for DIB is affirmed.

**IT IS SO ORDERED.**

Dated: June 27, 2022

Thomas M. Parker
United States Magistrate Judge